UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LARRY H. DUNN, JR.,

        Petitioner,

v.                                                  Case No. 18-C-700

WARDEN JUDY P. SMITH,

        Respondent.

**DECISION AND ORDER**

Having fully exhausted his state court remedies, Petitioner Larry H. Dunn, Jr., seeks federal relief under 28 U.S.C. § 2254 from his state court conviction for felony murder. Dunn claims that his conviction resulted from the ineffective assistance of his trial counsel in violation of his Sixth Amendment rights. For the reasons that follow, Dunn's petition will be granted.

**BACKGROUND**

In the early morning hours of May 10, 2011, the body of Andrew Schuckman was found lying face up on a concrete patio behind Peg & Lou's Bar in Racine, Wisconsin. There was a laceration to the back of his head and a small pool of blood under it. His blood/alcohol concentration was later reported as .298. Dr. Lynda Biedrzykcki, the medical examiner who conducted the autopsy, concluded that Schuckman had sustained multiple injuries to his face and head, but that death was caused by traumatic injuries to the brain resulting from a massive skull fracture.

Dunn and Michael Crochet were arrested after witnesses reported they had been involved in an altercation with Schuckman in the parking lot of the bar on the night of May 9, 2011.

Although he initially denied striking Schuckman, Dunn later admitted to a police investigator that he slapped Schuckman in the face when Schuckman approached Crochet in a threatening manner. Dunn told the investigator that Schuckman fell when he slapped him and his head bounced off the pavement. Dunn also told the investigator that he believed Schuckman was seriously injured and immediately notified the bartender. When the bartender did not go outside to check on him, Dunn said he went outside and observed Schuckman still laying on the ground unconscious. Dunn said he checked on Schuckman two or three more times to make sure he was still breathing before the bartender came out to assist.

Arthur Kuemin, the bartender, initially told police that Schuckman got up and walked away. At trial, Kuemin testified that when he went outside, Schuckman was sitting up on the ground, that there were no physical marks on him, and that he seemed to be in the same condition as when Kuemin had escorted him out of the bar earlier that evening. Kuemin testified that he escorted Schuckman with his arm around him and brought him to the back area where he left Schuckman seated on the grass leaned against a patio chair that was set completely in the grassy area. Dkt. No. 17-6 at 192:01–94:16. Sometime after midnight, Schuckman's body was found on the concrete patio approximately five feet from where Kuemin indicated he had left him. Schuckman was lying on his back with fresh blood flowing from his head and dried blood coming from his mouth and running horizontally to the ground on both sides of his face. Schuckman's shirt was pulled up above his chest and his keys and wallet were found near his right arm. *See* Oct. 2, 2019 Hr'g Ex. 1.

The State charged Dunn and Crochet with felony murder, theft from a corpse, and battery, all as a party to the crime and as a repeater, in violation of Sections 940.03, 940.19(1), 943.20(1)(a), (e), 939.05, and 939.62. Unlike the common law and traditional felony murder statutes,

2

Wisconsin's felony murder statute, Wis. Stat. § 940.03, does not require that death occur in the commission of a felony. In this case, the predicate crime for the charge against Dunn was misdemeanor battery.

Dunn was represented at trial by Attorney Travis Schwantes. Attorney Schwantes testified that, from the beginning, he regarded the privilege of self-defense as Dunn's primary defense. Dkt. No. 11-6 at 17:15–20. In the months leading up to trial, however, Attorney Schwantes recognized what he later described as "weaknesses" in the State's theory that Dunn caused Schuckman's death. In emails sent to the prosecutor, Attorney Schwantes noted the inconsistency between, on the one hand, the Medical Examiner's opinion that Schuckman would have died immediately from the severe head trauma he sustained and, on the other, the bartender's claim that he spoke with Schuckman after the altercation in the parking lot with Dunn and that he had helped Schuckman walk to the back patio. On October 19, 2011, Attorney Schwantes sent the prosecutor an email stating:

> It appears the medical examiner concluded the cause of death to be direct head trauma resulting in immediate death, not bleeding which leads to a herniated brain injury that causes death hours later (which is what I thought the [autopsy] report meant).
>
> The [medical examiner's] conclusion does not square with [bartender] Arthur Kuemin's statements (both of them) that he was talking with the decedent just after the altercation and even later on. The [medical examiner's] conclusion is that the head hit something and the person died immediately. This means Schuckman must have hit his head again after Kuemin first came out to talk to him which I think creates doubt.
>
> I think our argument is that:
>
> 1. Kuemin talked to the guy after the slap,
>
> 2. therefore, the slap, and the hitting of the head on the ground after the slap, wasn't what caused the death.

3

> 3. There had to have been some other head trauma after Dunn and Crochett [sic] came inside. This is borne out by the multiple head injuries.

Dkt. No. 11-1 at 14–15. On January 26, 2012, Attorney Schwantes emailed the prosecutor again explaining the problem he saw in the State's case:

> Specifically, as I think I told you in past conversations, the ME says the victim died immediately of head trauma. It was a slap, fall to the ground, death. It was not slap, fall to the ground, fall in and out of coherence, talk to bartender and possibly others while outside the bar, death. Because it was the former sequence, not the latter, and because the bartender insists he spoke to the victim, our argument is that some other hit (after Dunn's slap) had to be what led to the immediate death of the victim. It's these facts that lead me to believe a settlement as outlined below might be appropriate.

Dkt. No. 11-6 at 14:07–12.

In fact, however, Dr. Biedrzykcki did not state in her report or testify at trial that Schuckman would have died immediately from the severe head trauma he sustained, and Attorney Schwantes never spoke with her before she testified at trial. Instead, Dr. Beidrzykcki testified that the brain injuries Schuckman sustained would not necessarily have caused instantaneous death, nor would they necessarily have prevented Schuckman from communicating or moving after sustaining them.

Prior to trial, Attorney Schwantes consulted by telephone with Dr. Robert Corliss, a forensic pathologist at the University of Wisconsin, who Schwantes believed concluded from his review of the autopsy report that Schuckman's death from such an injury would have been instantaneous. But Attorney Schwantes did not call Dr. Corliss as a witness at Dunn's trial. *Id.* at 8:11–12; 11:19–12:05; 16:5–08. Thus, Dr. Beidrzykcki's testimony that death might not have been instantaneous went unrefuted at trial; no expert testimony was presented to counter the State's theory that Dunn inflicted the fatal blow in the parking lot before the bartender helped Schuckman move to the back patio.

4

The record also shows that shortly before trial, Attorney Schwantes learned that two experts retained by the attorney for Dunn's co-defendant Michael Crochet had reached conclusions that were in sharp contrast with the State's theory of the case. In an email sent to Attorney Schwantes eleven days before trial, the prosecutor wrote:

> Today I talked to Attorney Ward. He represents Crochet. He tells me that he has retained a blood spatter expert and a pathologist. He believes the two experts will establish that the victim may have: (A) stood up in that area that he was found dead; and (B), fell down and hit his head. He has not yet gotten the final reports from them. This evidence is directly contrary to your client's admission in the above case.

*Id.* at 55:12–20. Crochet was apparently set to be tried separately at a later date. Upon receipt of this email, Attorney Schwantes made no effort to contact Crochet's attorney or the experts he retained, nor did he seek a continuance so the reports could be finalized. Instead, Attorney Schwantes promptly replied to the prosecutor's email stating:

> Our theory of defense has always been that Mr. Dunn slapped Mr. Schuckman in self-defense; that he didn't die immediately because people heard him talking, mumbling, grumbling after hitting the parking lot; and that the medical examiner will say he died immediately. Therefore, there had to be a second time that his head hit the ground after Mr. Dunn's slap that caused the death. I believe that the testimony of the medical examiner, combined with the testimony of Bartender Kuemin, supports that there has to be another hit irrespective of what Ward's pathologist says.

*Id.* at 61:23–62:09. Dunn's case then proceeded to trial, resulting in his conviction on all three counts. He was sentenced to a cumulative term of eighteen years, including ten years of initial confinement, followed by eight years of extended supervision.

Within approximately a week after the conclusion of Dunn's trial, the experts retained by Crochet's attorney issued their final reports. Dr. Michael M. Baden, a forensic pathologist, concluded from his review of the record that Schuckman was struck in the face in the parking lot,

5

suffered nonfatal injuries, and that the causes of death were the injuries he received later when he fell backwards onto a concrete walkway. *Id.* at 67:12–20. The report of the other expert, T. Paulette Sutton, who analyzed the blood pattern evidence, offered three conclusions from her review of the evidence: (1) Schuckman was not actively bleeding in the parking lot; (2) Schuckman was never upright after he sustained the laceration to the back of his head; and (3) Schuckman remained on his back while blood emanated from his nose and mouth where his body was found on the concrete patio. Ms. Sutton's conclusions were based on the police reports and photo log indicating no blood stains in the parking lot, the fact that there was no evidence of blood drips or flows downward from the laceration on the back of his head to his shirt or collar, and the downward direction of the blood flow lines from his nose and mouth when he was found face up on the patio. *Id.* at 70:06–22. There was also no blood stain on the baseball cap Schuckman was reportedly wearing during the altercation in the parking lot. The State later dismissed the felony murder charge against Crochet and allowed him to plead to the aiding a felon and misdemeanor battery charges, for which he received a sentence of time served.

Represented by new counsel, Dunn filed a motion for postconviction relief in 2014 in which he raised a number of claims, including ineffective assistance of counsel. On February 27, 2015, the trial court held a full-day evidentiary hearing on Dunn's claim of ineffective assistance of counsel at which Attorney Schwantes recounted his representation of Dunn as described above. In addition to Attorney Schwantes, Dr. Peter J. Stephens, an expert in forensic pathology retained by the defense, and Dr. Biedrzycki testified. Dr. Stephens testified that, based on his review of the police records, statements, photographs, and autopsy report, Schuckman sustained the laceration to the back of his head and skull fracture on the patio in the back of Peg & Lou's Bar after the

6

altercation with Dunn and Crochet in the parking lot. Dr. Stephens based this conclusion on the autopsy report and findings as to the severity of the brain injury, and the bartender's statement that Schuckman was sitting up and conversing after the altercation in the parking lot. Dr. Stephens concluded Schuckman would not have regained consciousness and been able to walk the seventy feet to the back of the bar, even with assistance, after sustaining such a severe injury and that the laceration to the back of the head should have begun bleeding immediately. In his opinion, Schuckman would have died within minutes. Dr. Stephens found further support for his opinion in the report of Ms. Sutton analyzing the location, amount, and directional flow of blood, and the absence of blood stains in the parking lot where the altercation occurred, or on the baseball cap and shirt Schuckman was wearing at the time of the altercation. Given the high level of his alcohol intoxication, Dr. Stephens thought it likely Schuckman had fallen back on the concrete after he tried to get up after he was left on the patio.

Dr. Biedrzycki testified that, even if the skull fracture and severe brain injury that caused Schuckman's death had occurred in the parking lot, it was possible no blood would have been found in the parking lot. Dr. Biedrzycki described the 1.8 centimeter laceration as "fairly shallow" and "not gaping." Dkt. No. 11-5 at 109:11. The nature of the injury, Dr Beidrzycki testified, did not lead her to believe that there must be blood at the site of infliction. *Id.* at 114:16–18. Dr. Biedrzycki also described a "brush burn abrasion" on Schuckman's back that was consistent with his body being dragged to another location. *Id.* at 115–18. She also conceded that nothing in her autopsy report was inconsistent with the conclusion that Schuckman sustained the laceration and skull fracture on the concrete patio where his body was found.

7

Finally, at the close of the hearing, the court received the report of Christopher C. Luzzio, M.D., a neurologist and biomechanical engineer, who concluded that a man of Schuckman's height and weight could generate sufficient velocity and impact force falling backwards onto a concrete surface to fracture the back of his skull. Dr. Luzzio also concluded that Schuckman's acute intoxication likely contributed to his death by causing depressed respiration and loss of airway support.

The trial court denied Dunn's motion in an oral bench decision issued on June 19, 2015. With respect to the ineffectiveness of counsel claim asserted here—counsel's failure to conduct an adequate investigation and present independent evidence on the medical and scientific issues relating to his death—the trial court elected to address only the prejudice prong of the two-prong test for ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The court noted that under *Strickland* the test for prejudice is whether the defendant has shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Dkt. No. 11-7 at 11:11–14 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability," the court said, "is a probability sufficient to undermine confidence in the outcome." *Id.* at 4:19–21. After analyzing the evidence presented at the hearing, the court concluded that, while it was possible that the result of the trial would have been different had the defense presented opinion evidence such as that offered by Dr. Stephens at the hearing, Dunn had failed to demonstrate a probability of a different result. In the words of the court:

> Had the differing opinions been presented to the jury, is it possible that the jury may have chosen to accept the opinions of Dr. Stephens rather than those of Dr. Biedrzycki? Yes, it certainly is possible; no one can disagree with that. It is also possible that the difference in opinions may have created a doubt in the jury's mind on the issue of causation, which was in fact vigorously argued by trial counsel. But there is nothing about the nature of Dr. Stephens' opinions or the reasons for them

8

> that is so compelling that it leads to a conclusion that it is probable as opposed to
> simply possible that a different result would have been reached by the jury.

*Id.* at 19:24–20:12.

Dunn subsequently appealed the trial court's decision, asserting that his trial counsel rendered ineffective assistance by failing to adequately investigate the manner of death and call a forensic pathologist to testify in support of the no-causation defense and that he is entitled to a new trial in the interest of justice. Applying *Strickland v. Washington*, 466 U.S. 668 (1984), the Wisconsin Court of Appeals concluded that trial counsel did not perform deficiently. The court found, in particular, that trial counsel's testimony during the hearing on the post-conviction motion provided a reasonable explanation for his approach to investigating Schuckman's death and presenting a no-causation defense. Trial counsel explained that, based on his discussions with Dr. Corliss in preparation for trial, counsel learned there were multiple hits on Schuckman's head and that Dunn's slap did not cause each of those injuries. Counsel explained that, because there were multiple injuries, he thought "something else had to happen to [Schuckman] after Mr. Dunn went inside the bar, and maybe even after Mr. Dunn left the bar for the night." Dkt. No. 1 at 116. (alterations omitted). As a result, counsel believed he needed to only "pull out on cross-examination from the medical examiner that there were multiple injuries, especially in the absence of any evidence that Mr. Dunn caused injuries to Mr. Schuckman." *Id.* at 115–16. The court also noted that trial counsel did not regret calling Dr. Corliss as a witness for two reasons:

> The first reason was strategic, as counsel observed, "I feel strongly that if I can get information out of the State's witness that I can use in my closing statement, I feel that that's better than calling my own witness." The second reason was more practical, as counsel noted, "I don't think that Dr. Corliss contradicted the medical examiner in any way. Dr. Corliss told me that he thought that the conclusions of the medical examiner in this case were well-reasoned, well-thought." In the end,

9

>   counsel believed that he had sufficient evidence to present a plausible no-causation defense without an expert witness.

*Id.* at 116. The court of appeals concluded it could not find that trial counsel's actions fell "outside the wide range of professional competent assistance" and would not second-guess counsel's actions simply because the defense proved unsuccessful. *Id.* (quoting *Strickland*, 466 U.S. at 690). Because it found that trial counsel did not perform deficiently in his investigation of Schuckman's death and presentation of a no-causation defense, the court declined to grant Dunn a new trial. The Wisconsin Supreme Court denied Dunn's petition for review on February 15, 2017.

## ANALYSIS

Dunn's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the United States Supreme Court, or was "based on an unreasonable application of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.*

This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington*, 562 U.S. at 103).

Dunn asserts that his trial counsel provided ineffective assistance. A claim of ineffective assistance of trial counsel is governed by well-established law set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must show that (1) counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance deprived the defendant of a fair trial. *Id.* at 687–88. A petitioner satisfies the first prong if he demonstrates that "counsel's representation fell below an objective standard of reasonableness." *Id.* To satisfy the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission from counsel was unreasonable." *Id.* at 689. For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's performance must be highly deferential." *Id.* That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

11

The issue in this case is whether Dunn's trial attorney's investigation of Schuckman's death and of a no-cause defense was sufficient under any reasonable application of *Strickland*. The question is not whether trial counsel performed any investigation but whether "the extent of trial counsel's investigation was *adequate* depending on the facts in each particular case." *Stitts v. Wilson*, 713 F.3d 887, 892 (7th Cir. 2013). As the Court explained in *Strickland*, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 690–91. An attorney's cursory investigation does not automatically justify a "tactical decision." *See Wiggins v. Smith*, 539 U.S. 510, 527 (2003). "'A lawyer who fails to adequately investigate, and to introduce into evidence, information that demonstrates his client's factual innocence, or that raises sufficient doubts as to that question to undermine confidence in the verdict, renders deficient performance.'" *See Richey v. Bradshaw*, 498 F.3d 344, 362 (6th Cir. 2007) (quoting *Reynoso v. Giurbino*, 462 F.3d 1099, 1112 (9th Cir. 2006)).

Here, counsel assumed he knew how Dr. Biedrzycki would testify without interviewing her before trial. Counsel intended to establish through cross-examination that Dr. Biedrzycki believed Schuckman's death was instantaneous, which was inconsistent with the bartender's testimony that he had talked to Schuckman after the altercation and escorted him to a patio area behind the bar. This testimony was corroborated by one of the bar patrons who testified that, when he went outside to make sure his truck was not damaged in the altercation, he saw the bartender talking to Schuckman. According to the patron, the bartender helped Schuckman up and told everyone to go

12

back into the bar. Dkt. No. 17-6 at 141:9–12; 149:10–11. But having failed to interview Dr. Beidrzycki before trial, counsel had no reason to assume she would so testify.

In fact, Dr. Biedrzycki testified at trial that the skull fracture and associated traumatic brain injuries did not affect a "vital center" and that she did not believe that Schuckman necessarily died immediately. Dr. Biedrzycki also testified that Schuckman would have still been able to communicate and move after sustaining those injuries. Whether the slap caused Schuckman's death was a critical issue in the case. If trial counsel intended to elicit crucial evidence from Dr. Biedrzycki through cross-examination, he should have interviewed her before trial and ensured that she would testify consistently with counsel's theory of defense. Failing that, he should have had his own expert prepared to testify in order to provide the foundation upon which his primary defense was to rest. "Where an expert witness's opinion is 'crucial to the defense theory, defense counsel's failure to have questioned the expert prior to trial is inexcusable.'" *Stevens v. McBride*, 489 F.3d 883, 896 (7th Cir. 2007) (quoting *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)) (alterations omitted); *see also Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012) ("The consequences of inattention rather than reasoned strategic decisions are not entitled to the presumption of reasonableness.").

Counsel's explanation for why he did not call his own expert is plainly unreasonable. Dunn's trial counsel testified that he preferred not to call a defense expert because he thought eliciting the key information and testimony from the State's expert would appear more credible than calling a defense expert. *See* Dkt. No. 11-6 at 18. But this reasoning makes no sense if the State's expert is not going to provide the needed testimony upon which the defense is based. Having failed to retain an expert of his own, counsel was left with nothing to counter Dr. Biedrzycki's opinion

that Schuckman could have continued functioning to some extent even after the fatal blow. He was unable to offer evidence to support his defense that Schuckman must have sustained the fatal injuries on the concrete patio after the altercation in the parking lot, that Schuckman's intoxication could have contributed to his death by falling, or that the injuries would have resulted in immediate death. Counsel's failure was an unreasonable "lapse in professional judgment," not a strategic decision that is entitled to deference. *Monroe v. Davis*, 712 F.3d 1106, 1118 (7th Cir. 2013). His decision to forego calling his own expert was made without the kind of investigation that *Strickland* requires.

Counsel's objectively unreasonable performance is not limited to his failure to properly investigate Dr. Biedrzycki's opinions and to call a defense expert to support his own theory of defense. Counsel also failed to seek an adjournment based on the State's disclosure of the exculpatory findings of Crochet's experts or adequately investigate those findings. In evaluating the reasonableness of an attorney's investigation, "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). After learning through the prosecutor's disclosure that two experts retained by Crochet's counsel held opinions that seriously undermined the State's theory of the case, counsel failed to even call Crochet's attorney to inquire about the matter, let alone seek a continuance to obtain the final reports. Counsel testified that he did not seek an adjournment to review Crochet's expert reports, understand how the experts reached their conclusions, or investigate further because his client wanted to proceed to trial. But counsel never discussed the new evidence with Dunn. Dunn presumably wanted to proceed to trial on a *complete* defense. And within a week of Dunn's trial, Crochet's

14

experts issued their final reports. The findings of Crochet's experts—that the causes of Schuckman's death were the injuries he received when he fell backwards onto a concrete walkway, that Schuckman was never upright after he sustained the laceration to the back of his head, and that Schuckman was not actively bleeding in the parking lot—undermined the State's theory in Dunn's case. It was unreasonable for counsel not to at least inquire as to the basis of those opinions and, assuming he found it important to his defense, seek a continuance to investigate the matter further after receiving information about this evidence. The court concludes that trial counsel's performance fell below the constitutional minimum standard. The Wisconsin Court of Appeals' ruling to the contrary amounted to an unreasonable application of *Strickland*.

Because the Wisconsin Court of Appeals did not address the prejudice prong of *Strickland*, this court is to review this prong *de novo*. *See Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019). Respondent conceded as much at oral argument. To establish prejudice, Dunn must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. *Strickland* asks "whether it is 'reasonably likely' the result would have been different." *Harrington*, 562 U.S. at 111 (quoting *Strickland*, 466 U.S. at 696). "In weighing the effect of counsel's errors, the court must consider the totality of the evidence before the judge or jury. Consequently, a verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001); *see also Stanley v. Bartley*, 465 F.3d 810, 814 (7th Cir. 2006) ("For the issue is not whether [the petitioner] is innocent but whether if he had had a competent lawyer he would have had a

15

reasonable chance (it needn't be a 50 percent or greater chance) of being acquitted . . . ." (internal citation omitted)).

In finding that prejudice had not been shown, the trial court acknowledged that it was "certainly possible" that the jury could have believed Dr. Stephen's opinion rather than Dr. Biedrzycki about whether Schuckman could have regained consciousness after the fatal injury, and that it was also possible that the difference in opinions would have created reasonable doubt in the juror's minds. Dkt. 11-7 at 20:03–07. The court then concluded: "But there is nothing about the nature of Dr. Stephen's opinions or the reasons for them that is so compelling that it leads to a conclusion that it is probable as opposed to simply possible that a different result would have been reached by the jury." *Id*. at 22:07–12. This analysis at least suggests that the trial court believed that the defendant was required to present "compelling" evidence that a different result would have been obtained in order to show prejudice. This is not the standard.

In the view of this court, Dunn has demonstrated a reasonable probability that the result would have been different had Dunn's counsel adequately presented the no-causation defense and the jury heard expert testimony of the sort presented by Dr. Stephens at the post-conviction hearing. In addition to Kuemin's testimony, the fact that Schuckman's body was somehow moved from the grassy area where Kuemin testified he left him to where he was lying face up with the upper portion of his body on the patio, his wallet and identification strewn around him, raises significant questions about the State's theory of the case. The State argued that the testimony of one witness that, as he was leaving the bar, he saw Crochet walking from the direction of the patio to Dunn's truck and that Schuckman's blood was found on Crochet's pants suggested that Crochet and Dunn had gone back to the patio to finish the job. Dkt. No. 17-8 at 99:16–100:4. But the same witness said Dunn was

16

in his truck and he saw only Crochet walking from the area. Thus, while the cited evidence may implicate Crochet, it does not implicate Dunn. More importantly, the suggestion that Schuckman was later "finished off" is inconsistent with the State's theory that Dunn caused his death earlier in the parking lot with his single blow.

Dr. Stephens, on the other hand, opined that Schuckman likely fell back on the concrete patio in the back of Peg & Lou's Bar after he tried to get up from the patio and sustained the laceration to the back of his head and skull fracture at that time. He would have testified that Schuckman would have died within minutes of sustaining the injury and would have rejected the contention that Schuckman would have regained consciousness and been able to walk the seventy feet to the back of the bar after sustaining such a severe injury.

Dr. Stephens also noted that the lacerations would be expected to bleed almost immediately, to show fresh blood on the parking lot surface, and to produce dripping blood that would fall under gravity down the back of Schuckman's neck had he walked to the patio from the parking lot. Oct. 2, 2019 Hr'g Ex. 1. He found support for his conclusions in Ms. Sutton's report, which analyzed the location, amount, and directional flow of the blood, and the absence of blood stains in the parking lot or along the path to the back of the bar.

In addition, Dr. Luzzio concluded in his report that a man of Schuckman's height and weight could generate sufficient velocity and impact force falling backwards onto a concrete surface to fracture the back of his skull. Dr. Beidrzycki conceded at the postconviction hearing that nothing in the autopsy report was inconsistent with the conclusion that Schuckman sustained the laceration and skull fracture on the concrete patio where his body was found.

17

Given the unusual facts of this case, the need for expert testimony, such as that of Dr. Stephens and Dr. Luzzio, to assist in Dunn's defense was apparent. Having misread Dr. Biedrzycki's report and incorrectly assumed her testimony would support his theory of defense, Attorney Schwantes failed to recognize the need for such testimony until it was too late. While the jury may have reached the same conclusion even with such evidence, the fact that no such evidence was offered, even though available, substantially undermines one's confidence in the result. This is sufficient to establish prejudice under *Strickland*.

## CONCLUSION

For the reasons set forth above, the court concludes that Dunn's rights under the Sixth Amendment were violated when his trial counsel provided ineffective assistance in failing to investigate and offer evidence to support the no-cause defense. It thus follows that Dunn's petition for relief under 28 U.S.C. § 2254 should be granted. Dunn is ordered released from custody unless, within 90 days of the date of this decision, the State initiates proceedings to retry him. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   31st   day of December, 2019.

                                          s/ William C. Griesbach
                                          William C. Griesbach, District Judge
                                          United States District Court - WIED